White v. Commonwealth.

Case 30—INDICTMENT—November 24.

## White v. Commonwealth.

APPEAL FROM HENDERSON CIRCUIT COURT.

1. RAPE.—COMPETENCY OF CHILD AS A WITNESS.—Under an indictment for rape upon an infant under twelve years of age, the intelligence of the child upon which the offense is alleged to have been committed, is the true test of her competency as a witness, and that must be de-termined by the court, while the weight to be given the evidence is for the jury. The fact that the child is ignorant of God and of the evil of lying, does not render her incompetent as a witness, as all per-sons are competent as witnesses so far as any religious test is con-cerned.

2. THE METHOD OF IMPEACHING WITNESSES FOR TRUTH AND VERACITY, virtue and morality, is by direct, positive testimony of those who are acquainted with the reputation of the witness for either, among his or her neighbors and acquaintances, and not inferentially by proving that a certain house in the neighborhood has the reputation of being a bawdy-house.

3. To CONSTITUTE THE OFFENSE OF RAPE even upon a child, however un-developed, there must be some penetration, however slight. But direct, positive proof of penetration is not necessary; it may be in-ferred from circumstances.

4. THE STATUTORY OFFENSE OF CARNALLY KNOWING A FEMALE UNDER TWELVE YEARS OF AGE may be committed even though the female nominally consents, as she is not in legal contemplation capable of consenting.

White v. Commonwealth.

J. L. DORSEY FOR APPELLANT.

1. There can be no carnal knowledge of an infant without penetration, and the court should have instructed the jury that, if they believed the defendant only rubbed or pressed his parts against the parts of the infant without penetration, they should find him guilty of assault and battery only.

2. Appellant should have been allowed to prove that the place where the infant lived was a bawdy-house.

3. The testimony of the prosecuting witness should not have been admitted, as she had never heard of God or of the evil of lying.

4. The court properly refused an instruction which authorized the jury to find against the defendant, though the act was done with the consent of the infant, if the evidence otherwise justified the conviction.

WM. J. HENDRICK, ATTORNEY-GENERAL, AND J. H. POWELL FOR APPELLEE.

1. Penetration of the parts is not necessary to constitute the offense of carnal knowledge of an infant under twelve years of age, but is necessary only in cases of rape.

2. An infant under the age of ten years is incapable of consenting, and carnal knowledge of such an one is, in law, against her will and consent, although there may have been no actual resistance on her part

3. The court properly refused the instruction asked by the appellant, that if there had been no penetration the jury should find the defendant guilty of assault and batery only.

CHIEF JUSTICE QUIGLEY DELIVERED THE OPINION OF THE COURT.

At the September term, 1894, of the Henderson Circuit Court, the grand jury of Henderson county found an indictment against appellant for rape, committed in manner and form as follows: "The said Samuel White, on the 29th day of July, 1894, and before the finding of this indictment, in the said county of Henderson, did unlawfully, violently and feloniously make an assault upon the body of one Lilly Ann Lewis, a female infant under twelve years of age, and her, the said Lilly Ann Lewis, then and there, forcibly and against her will, feloniously did ravish and car-

nally know, against the peace and dignity of the
Commonwealth of Kentucky."

To this indictment the defendant entered the plea
of "not guilty," and, on trial had, the jury returned
into court the following verdict: "We, the jury, find
the within named defendant not guilty as charged,
but guilty of having carnal knowledge with the in-
fant, Lilly Ann Lewis, and fix his punishment at
confinement in the penitentiary for ten years."

The defendant entered a motion for a new trial, and
in support thereof filed the following reasons: The
verdict of the jury is against the law and evidence;
the court erred in permitting the prosecuting witness,
Lilly Ann Lewis, to testify; the court erred in re-
fusing to permit defendant's witnesses to state that
the house where the infant is charged to have been
raped was a bawdy-house, and had the reputation of
being such in the neighborhood; the court erred in
giving to the jury instructions 1, 2, 3 and 4, and in
refusing to give to the jury instructions A and B,
asked to be given by defendant, to all of which the
defendant objected and excepted.

The motion for a new trial having been overruled,
and judgment having been pronounced against the
defendant, he prosecutes this appeal to reverse the
judgment of the lower court.

This court has held repeatedly, that it has no power
to reverse a judgment of conviction in a criminal
prosecution upon the ground that the evidence is not
sufficient to support the verdict, being restricted to
the single inquiry, whether there was any evidence
before the jury conducing to show the guilt of the

accused, and in this case we think there was.    There
is no error in the admission or non-admission of tes-
timony either as to relevancy or competency.    The
intelligence of the witness is the true test of com-
petency, and that must be determined by the court,
while the weight to be given to the evidence is for
the jury.    A child may be ignorant of "God" and of
the evil of lying and of the punishment prescribed
therefor, both here and hereafter, and yet have suf-
ficient intelligence to truthfully narrate facts to which
its attention is directed.

Mr. Blackstone, in his Commentaries, Book 4, page
213, third edition thereof, says: "Moreover, if the
rape be charged to be committed on an infant under
twelve years of age, she may still be a competent
witness if she hath sense and understanding to know
the nature and obligations of an oath, or even to be
sensible of the wickedness of telling a deliberate lie.
Nay, though she hath not, it is thought by Sir
Matthew Hale, that she ought to be heard, without
oath, to give the court information; and others have
held that what the child told her mother or other
relations may be given in evidence, since the nature
of the case admits frequently of no better proof.
But it is now settled, that no hearsay evidence can
be given of the declarations of a child who hath not
capacity to be sworn, nor can such child be exam-
ined in court without oath; and that there is no
determinate age at which the oath of a child ought
either to be admitted or rejected.    Yet, where the
evidence of children is admitted, it is much to be
wished, in order to render their evidence credible,

that there should be some concurrent testimony of time, place and circumstances in order to make out the fact, and that the conviction should not be grounded singly on the unsupported accusation of an infant under years of discretion. There may be, therefore, in many cases of this nature, witnesses who are competent; that is, who may be admitted to be heard; and yet, after being heard, may prove not to be credible, or such as the jury is bound to believe. For one excellence of the trial by jury is, that the jury are triers of the credit of the witnesses as well as of the truth of the fact. It is true,'' says this learned judge, ''that rape is a most detestable crime, and, therefore, ought severely and impartially to be punished with death; but it must be remembered that it is an accusation easy to make, hard to be proved, but harder to be defended by the party accused, though innocent.'' See also Wharton's Criminal Evidence, sections 352, 366 and 368; and the case of Bush v. Commonwealth, 80 Ky., 244, in which it was held, Judge Hines delivering the opinion, ''that the Constitution changes the common law rule, and that all persons are competent as witnesses so far as any religious test is concerned.''

The evidence rejected, if admitted, would only have gone to the reputation of the place generally. The method of impeaching the character of witnesses for truth and veracity, virtue and morality, is well settled by law, and should always be done by direct, positive testimony of those who are acquainted with the reputation of the witness for either, among his or her neighbors and acquaintances, and not inferentially

White v. Commonwealth.

by proving that a certain house in the neighborhood has the reputation of being a bawdy-house.

As to the instructions given by the court, it is only necessary for the purposes of this appeal to consider instruction No. 2, which reads as follows: "If they have a reasonable doubt as to whether or not the defendant is guilty of rape as above defined, but believe to the exclusion of a reasonable doubt that he had carnal knowledge of said female with her consent, they will find him not guilty of rape, but guilty of having carnal knowledge with an infant female under twelve years of age, and fix his confinement in the penitentiary from ten to twenty years in their discretion. To have carnal knowledge with the infant's consent, there must have been some penetration, however slight, if the parts of the infant were sufficiently developed to admit it; but if not so developed, then the pressing or rubbing his private parts against her private parts for the purpose of producing an emission, was sufficient to constitute carnal knowledge;" the question raised, being whether or not penetration, however slight, is necessary to constitute carnal knowledge. In Beck's Medical Jurisprudence, vol. 1, page 224, we find this language: "Rape is the carnal knowledge of a female forcibly and against her will. It has been a subject of legal discussion as to what constitutes this carnal knowledge. Some judges have supposed that penetration alone was sufficient, while others have contended that penetration and emission are both necessary." But on page 226 of the same book, Mr. Chitty observes: "It is certain that no direct evidence need be

given to the emission, but that will be presumed on proof of penetration, until rebutted by the prisoner. And it will suffice to prove the least degree of penetration, so that it is not necessary that the marks of virginity should be taken from the sufferer."

Mr. Wharton, in his work on Criminal Law, eighth edition, vol. 1, sections 554 and 555, says:

"A very considerable doubt," remarks Mr. East, "having arisen as to what shall be considered sufficient evidence of the actual commission of this offense; that is, in what carnal knowledge consists, it is necessary to enter into an inquiry which would otherwise be offensive to decency. Considering the nature of the crime, that it is a brutal and violent attack upon the honor and chastity of the weaker sex, it seems more natural and consonant to those sentiments of laudable indignation which induced our ancient law-givers to rank this offense among felonies, if all further inquiry were unnecessary after satisfactory proof of the violence having been perpetrated by actual penetration of the unhappy sufferer's body. The quick sense of honor, the pride of virtue, which nature, to render the sex amiable, hath implanted in the female heart, as Mr. Justice Foster has expressed himself, is already violated past redemption, and the injurious consequences to society are in every respect complete. Upon what principle and for what rational purpose any further investigation came to be supposed necessary, the books which record the dicta to that effect do not furnish a trace." The doubts, however, that existed in England, have been put to rest by 9 Geo. IV c. 31, making the least penetration

enough; and in this country the proof of emission seems never to have been required. In several instances, in fact, it has been held that as the essence of the crime is the violence done to the person and feelings of the woman, which is completed by penetration without emission, it will be sufficient to prove penetration. But while the slightest penetration is sufficient, there must be specific proof of some, though the proof of this may be inferred from circumstances aside from the statement of the party injured. It must be shown, to adopt the phraseology of Tindal, C. J., and afterwards of Williams, J., that the private parts of the male entered, at least to some extent, in those of the female. At one time it was even thought that there must be proof that the hymen was ruptured, though this is no longer considered necessary.

The law may now, indeed, be considered as settled, that while the rupturing of the hymen is not considered indispensable to a conviction, there must be proof of some degree of entrance of the male organ "within the labia of the pudendum;" and the practice seems to be, to judge from the cases just cited, not to permit a conviction in which it is alleged violence was done, without medical proof of the fact, whenever such proof is attainable. It seems but right both in order to rectify mistakes and to supply the information necessary to convict, that the prosecutrix should be advised of this, so that she can take the necessary steps to secure such examination in due time.

If this test be generally insisted upon, there is no danger of any conviction failing because of non-com-

pliance with it.   And, on the other hand, many mis-
taken prosecutions will be stopped at the outset.   In
the case of Brauer v. State, reported in 25 Wiscon-
sin, 413, the case being very similar to this, in that
the little girl was but eight years of age, the defend-
ant being discovered in supposed criminal connection
with her, but different, in that the child did not tes-
tify as a witness, it appeared from the evidence of
the surgeon that the parts were very much inflamed,
but the hymen was not ruptured nor the vagina en-
tered.   The court says: "It will be seen from this
statement of the testimony that the objection to the
proof is, that it was not direct and positive to the fact
of penetration.   It is conceded that any, the slightest
penetration, will suffice to constitute the offense, and
that rupturing the hymen is not indispensable to a
conviction.   But it is insisted that penetration to
some extent must be positively proven, and that it
can not be found by the jury from circumstances.
We are of the opposite opinion, and such we believe
to be the clear weight of authority.   In a case of this
kind, where the offense is committed upon a child of
tender years, and who, from want of knowledge and
inexperience, may be incapable of giving testimony,
it often happens, as in this instance, that direct and
positive proof of penetration can not be made ; and if
proof by circumstances were excluded or held insuffi-
cient, the offender must go unpunished ; and we ac-
cordingly find in such cases, that the utmost reliance
is placed on the testimony of medical witnesses, who,
from their professional skill and understanding, are
able to guide to pretty unerring results.   The marks

of violence left after such an attempt upon a child, the inflamed, swollen and unnatural condition of the parts, together with the pains and soreness complained of, are considered quite as sure indications of what has been done, as if the child herself were able to testify, and even more sure than her positive statement would be, unsustained by such corroborating facts and circumstances."

And in the case of Reg. v. Lines, reported in 47 English Common Law Reports, 393, on an indictment for carnally knowing and abusing a child under the age of ten years, it appeared from the cross-examination of the surgeon, with respect to the penetration, that the hymen of the child was not ruptured, but that upon the hymen there was a venereal sore, which must have arisen from actual contact with the virile member of a man. Counsel for the prisoner submitted that all these appearances were consistent with the fact of the private parts of the prisoner being in actual contact with the private parts of the child, and yet no penetration sufficient to constitute the whole offense may have taken place. The court said: "I shall leave it to the jury to say whether, at any time, any part of the virile member of the prisoner was within the 'labia of the pudendum' of the prosecutrix; for if ever it was, no matter how little, that it will be sufficient to constitute a penetration, and the jury ought to convict the prisoner of the complete offense."

Section 344 of the Criminal Code provides, that a judgment of conviction shall be reversed for any error of law appearing on the record, when, upon consid-

eration of the whole case, the court is satisfied the substantial rights of the defendant have been prejudiced. So that we are constrained to hold, in the light of these eminent authorities, that there must be a penetration, however slight it may be, to constitute carnal knowledge. In this case the instruction complained of was extremely prejudicial to the substantial rights of the defendant, in that it authorized the jury to find him guilty of carnally knowing the child, whether penetration was shown from the evidence or not. It appears from the evidence that, within an hour or so after the offense is said to have been committed, a doctor examined the child. He testified that her parts were not bruised, the hymen was not broken ; that he could not penetrate her parts with his little finger, and that she had not been raped, and that, although it was possible for a slight penetration to have been made, yet the condition of the parts did not indicate that such was the case. The little girl, however, testified that defendant did penetrate her parts a little, and that it hurt her, and it was established by the testimony of one of the witnesses, that she looked through the window into the room where the child and defendant were, and that the child was on the bed and defendant on top of her, and that she was crying when defendant got up and opened the door.

The instruction asked to be given by the Commonwealth's Attorney and refused by the court, raised the question as to whether or not an infant under ten years of age could consent to carnal knowledge of her person. The statute reads as follows :

White v. Commonwealth.

"Sec. 1152. Whoever shall be guilty of the crime of rape upon the body of an infant under twelve years of age, shall be punished with death, or with confinement in the penitentiary for life, in the discretion of the jury.

"Sec. 1155. Whoever shall carnally know a female under the age of twelve years, or an idiot, shall be confined in the penitentiary not less than ten nor more than twenty years."

This court held in the case of Fenston v. Commonwealth, 82 Ky., 549, opinion by Judge Lewis, that "a female under that age is presumed to be, as an idiot in fact is, without capacity and discretion to comprehend fully the consequences of yielding to the ravisher, or strength of will to resist his influence and importunities. Hence, carnal knowledge of her, even with her nominal consent, is, in legal contemplation, forcible and against her will; and though not deemed of as heinous nature, nor punished with the same severity, as when, in fact, forcible and against her consent, is, nevertheless, in the meaning of the statute, rape, and punished as such."

Because of error in instruction No. 2, the judgment is reversed, and this case is remanded for proceedings consistent with this opinion.